# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In the Matter of: | In Bankruptcy: |
| **CONSTELLATION ENTERPRISES, LLC.,** *et al.,* | Case No. 16-11213-css<br>Chapter 7<br>Hon. Christopher S. Sontchi |
| Debtors.[1] | |

| | |
|---|---|
| **DAVID W. CARICKHOFF, Trustee,** | |
| Plaintiff, | |
| v. | Adv. Pro. 18-50868-css |
| **WOLVERINE OIL & SUPPLY CO., INC.,** | |
| Defendant. | |

## MOTION FOR SANCTIONS AGAINST PLAINTIFF
## PURSUANT TO FED. R. BANKR. P. 9011 AND 28 U.S.C. § 1927

Defendant Wolverine Oil & Supply Co., Inc. ("Defendant"), for its Motion for Sanctions Against Plaintiff Pursuant to Fed. R. Bankr. P. 9011 and 28 U.S.C. § 1927, states as follows:

### JURISDICTION

1. The Court has jurisdiction over this matter pursuant to Fed. R. Bankr. P. 9011, 28 U.S.C. § 1927, and 11 U.S.C. § 105.

2. This is a core proceeding under 28 U.S.C. § 157(b)(2).

### FACTS

3. On May 16, 2016, Columbus Steel Castings Company ("Plaintiff") filed it's petition for

---

[1] The debtors in the above-captioned chapter 7 cases, along with the last four digits of the federal tax identification number for each of the debtors, where applicable are: Constellation Enterprises LLC (9571 ); JFC Holding Corporation (0312); The Jorgensen Forge Corporation (1717); Columbus Holdings Inc. (8155); Columbus Steel Castings Company (8153); Zero Corporation (0538); Zero Manufacturing, Inc. (8362); Metal Technology Solutions, Inc. (7203); Eclipse Manufacturing Co. (1493); and Steel Forming, Inc. (4995) (collectively, the "Debtors").

Chapter 11 Bankruptcy relief.

4. On October 2, 2017, after the sale of Plaintiff's assets, Plaintiff converted its' case to Chapter 7.

5. On or about June 6, 2018, Plaintiff sent Defendant a demand letter for return of payments made by Plaintiff during the 90 day preference period totalling $80,643.75.

6. On or about June 26, 2018, Defendant sent Plaintiff a response letter asserting that the payments were not preferential as defined under 11 U.S.C. § 547(c) and demanding Plaintiff release its claims.

7. On September 26, 2018, Plaintiff brought suit against Defendant for $80,643.75 (Doc # 1)

8. On January 31, 2019, Defendant served a "Safe Harbor" letter demanding Plaintiff withdraw his Complaint and pay Defendant's costs and legal fees, as required by Fed. R. Bankr. P. 9011(c)(1)(A).

9. Plaintiff has failed to respond, and more than 21 days have passed.

## ARGUMENT

10. Pursuant to Fed. R. Bankr. P. 9011 and 28 U.S.C. § 1927, this Court may award sanctions for attorneys fees, costs, and penalties for violation of Fed. R. Bankr. P. 9011(b) upon motion of a party after service of a 21-day "safe harbor letter".

11. Defendant relies on and incorporates herein the arguments stated in his attached Brief in Support of Motion for Sanctions Against Plaintiff Pursuant to Fed. R. Bankr. P. 9011 and 28 U.S.C. § 1927 by reference.

WHEREFORE, Defendant Wolverine Oil & Gas Co., Inc. respectfully request that this Court grant this Motion by issuing an Order awarding sanctions and granting such other relief as is just and equitable.

                          Respectfully submitted,

                          **CLAYSON, SCHNEIDER & MILLER, P.C.**

Dated: March 1, 2019            <u>*/s/ David P. Miller, attorney*</u>
                                        David P. Miller (P-79911)
                                        Attorneys for Defendant
                                        645 Griswold, Suite 3900
                                        Detroit, MI 48226
                                        (313) 237-0850
                                        david@detlegal.com

**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In the Matter of: | In Bankruptcy: |
| **CONSTELLATION ENTERPRISES, LLC.,** *et al.,* | Case No. 16-11213-css<br>Chapter 7<br>Hon. Christopher S. Sontchi |
| Debtors.[2] | |

**DAVID W. CARICKHOFF, Trustee,**

　　　　Plaintiff,

v.                                                                                                           Adv. Pro. 18-50868-css

**WOLVERINE OIL & SUPPLY CO., INC.,**

　　　　Defendant.

*[proposed]*
**ORDER AWARDING SANCTIONS**
**AGAINST PLAINTIFF AND FOR DEFENDANT**

THIS MATTER having come before the court upon Motion by the Defendant, and Plaintiff having been served pursuant to applicable bankruptcy rules, and the Court being duly advised in the premises:

IT IS HEREBY ORDERED that the Motion is GRANTED.

IT IS FURTHER ORDERED that Defendant is awarded all reasonable attorney fees and expenses incurred in defense of Plaintiff's Complaint and in prosecution of its sanctions motion.

IT IS FURTHER ORDERED that within 14 days of entry of this order, movant shall submit an itemization of fees and costs incurred in defense of Plaintiff's Complaint and in prosecution of

---

[2] The debtors in the above-captioned chapter 7 cases, along with the last four digits of the federal tax identification number for each of the debtors, where applicable are: Constellation Enterprises LLC (9571); JFC Holding Corporation (0312); The Jorgensen Forge Corporation (1717); Columbus Holdings Inc. (8155); Columbus Steel Castings Company (8153); Zero Corporation (0538); Zero Manufacturing, Inc. (8362); Metal Technology Solutions, Inc. (7203); Eclipse Manufacturing Co. (1493); and Steel Forming, Inc. (4995) (collectively, the "Debtors").

its sanctions motion. Plaintiff shall have 7 days from submission of the itemization within which to object to the reasonableness of the fees and costs. Upon expiration of the 7 days without objection, Movant shall submit and the Court will enter an order awarding costs and fees as expressed in the itemization.

IT IS FURTHER ORDERED that Plaintiff, Plaintiff's attorney Jeffrey M. Traurig and Archer & Greiner P.C. shall be held jointly and severally liable to Movant for attorney fees and costs awarded by this court, as well as any fees and costs incurred in collection of such fees and costs.

**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In the Matter of: | In Bankruptcy: |
| **CONSTELLATION ENTERPRISES, LLC.,** *et al.,* | Case No. 16-11213-css<br>Chapter 7<br>Hon. Christopher S. Sontchi |
| Debtors.[3] | |
| **DAVID W. CARICKHOFF, Trustee,** | |
| Plaintiff, | |
| v. | Adv. Pro. 18-50868-css |
| **WOLVERINE OIL & SUPPLY CO., INC.,** | |
| Defendant. | |

**BRIEF IN SUPPORT OF**
**DEFENDANT'S MOTION FOR SANCTIONS AGAINST**
**PLAINTIFF PURSUANT TO FED. R. BANKR. P. 9011 AND 28 U.S.C. § 1927**

Wolverine Oil & Gas Co., Inc. ("Defendant") by and through its attorneys Clayson, Schneider & Miller, P.C. states as follows for its Brief in Support of Defendant's Motion for Sanctions Against Defendant Pursuant to Fed. R. Bankr. P. 9011:

**FACTUAL STATEMENT**

Constellation Enterprises LLC, one of the Debtors represented by Plaintiff (hereinafter referred to as "Plaintiff") began purchasing crude oil from Defendant in April of 2012, and continued to do so until Plaintiff filed bankruptcy on May 16, 2016. During the course of Plaintiff and Defendant's

---

[3] The debtors in the above-captioned chapter 7 cases, along with the last four digits of the federal tax identification number for each of the debtors, where applicable are: Constellation Enterprises LLC (9571); JFC Holding Corporation (0312); The Jorgensen Forge Corporation (1717); Columbus Holdings Inc. (8155); Columbus Steel Castings Company (8153); Zero Corporation (0538); Zero Manufacturing, Inc. (8362); Metal Technology Solutions, Inc. (7203); Eclipse Manufacturing Co. (1493); and Steel Forming, Inc. (4995) (collectively, the "Debtors").

business relationship, Defendant paid off Plaintiff's invoices, on average, 84.63 days after issuance. The longest time between invoice and final payoff was 126 days. The shortest time between invoice and final payoff was 27 days. Most of the invoices were paid via a series of three or more partial payments. Most of the invoices were issued only after final payment of an older invoice (although not necessarily the only outstanding invoice) was paid. Essentially, Defendant would generally only supply a new shipment of oil to Plaintiff upon receipt of payment, thus providing new value for payment of old debt. (*See* Exhibit A - Wolverine Oil & Supply Co., Inc. Customer Report, *See also* Exhibit B - Wolverine-CSC - Invoice and Payment Analysis)

Plaintiff's final payment to Defendant was made on April 21, 2016 in the amount of $27,054.00, and was partial payment of two different invoices: (1) Invoice No. 170251, issued 3/4/2016 in the amount of $9,054.00 (paid off), and (2) Invoice No. 170415, issued 3/29/2016 in the amount of $18,000.00 (partial payment). (*Id., See also* Exhibit C - Check Image).

On May 16, 2016, after presumably stocking up for a Chapter 11 sale, Plaintiff filed its petition for Chapter 11 Bankruptcy relief. On October 2, 2017, after the sale of Plaintiff's assets, Plaintiff converted its case to Chapter 7. On or about June 6, 2018, Plaintiff sent Defendant a demand letter for return of payments made by Plaintiff during the 90 day preference period totalling $80,643.75. On or about June 26, 2018, Defendant sent Plaintiff a demand letter asserting that the payments were not preferential as defined under 11 U.S.C. § 547(c).

Shortly thereafter, Defendant and Plaintiff's counsel communicated regarding Plaintiff's claims by email and by telephone calls, during which Plaintiff admitted his claims would be limited by ordinary course and new value exceptions to approximately $27,054 at most, representing the final check issued by Plaintiff to Defendant, check number 130678 (Exhibit C). Defendant advised Plaintiff that he would provide further documentary evidence to Plaintiff regarding the matter, but insisted that Plaintiff withdraw his demands as vexatious and extortious, based on the costs of

defending claims brought across the country in light of the evidence presented.

On August 17, 2018, Defendant sent documents to Plaintiff, including the check copy attached as Exhibit C, and further demanded that Plaintiff withdraw his claims. On August 20, 2018, Plaintiff further demanded payment by Defendant of at least $27,054, and sent his purported historical payment analysis (Exhibit D - Plaintiff's Payment Analysis), conveniently excluding the two shortest "invoice to payment dates", checks number 124780 and 124933, from his analysis of average payoff dates. Thereafter, by emails and phone conversations, Defendant made Plaintiff painfully aware of the history and factual circumstances surrounding the parties business relationship, as described in the first two paragraphs of this section. Regardless, Plaintiff insisted Defendant make a settlement offer relating to the final $27,054 payment, or else be forced to "defend the lawsuit halfway across the country in Delaware". Defendant refused to pay Plaintiff's ransom and denied any culpability.

On September 26, 2018, Plaintiff brought suit against Defendant for the full $80,643.75 (Doc # 1), despite having previously admitted to Defendant that his claims were limited to $27,054 at most by ordinary course and new value exceptions to preferential transfers. On November 28, 2018, Defendant requested Plaintiff stipulate to entry of an order allowing Defendant's counsel (located and practicing in the U.S. Bankruptcy Court for the Eastern District of Michigan, where both Defendant and Plaintiff conducted majority of their business transactions) to appear and be allowed to practice in Delaware's bankruptcy court *pro hac vice* under Delaware Bankruptcy Court Local Rule 9010-1(e)(iii). Although clearly authorized by the rule and thereafter granted by the Court, Plaintiff refused to stipulate for *pro hac vice* admission in an attempt to further vex Defendant and drive up costs for Defendant, as a pressure to settle a knowingly illegitimate and vexatious lawsuit.

On December 4, 2018, Defendant sent Plaintiff an extensive email detailing how the only

payment that could have possibly been at issue, the $27,054 final payment, fell under the ordinary course of business exception, attaching relevant case-law issued by this Court. (*See* Exhibit E - Email and Attached Opinion). On January 31, 2019, Defendant again corresponded with Plaintiff regarding additional case-law and existing evidence rendering Plaintiff's claims meritless. (*See* Exhibit F - Email). Regardless, Plaintiff continues pursuit of his lawsuit in the full amount of $80,643.75.

Defendant served a letter upon Plaintiff on January 31, 2019 demanding Plaintiff withdraw his Complaint for the reasons outlined in this Brief (the "Safe Harbor Letter"). (*See* Exhibit G - Safe Harbor Letter). Twenty-one days have passed since service of the Safe Harbor Letter, and Plaintiff failed to respond.

**ARGUMENT**

Plaintiff's lawsuit was filed in violation of Fed. R. Bankr. P. 9011(b) and Defendant should be awarded sanctions from Plaintiff pursuant to Fed. R. Bankr. P. 9011(c) and 28 U.S.C. § 1927.

**1.    Legal Standard**

Pursuant to Fed. R. Bankr. P. 9011(b):

> Representations to the Court. By presenting to the court (whether by signing, filing, submitting, or later advocating) a petition, pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,—
>
> > (1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
> >
> > (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;
> >
> > (3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery[…].

Pursuant to 28 U.S.C. § 1927 a court may sanction any attorney that "…multiplies the proceedings in any case unreasonably and vexatiously...." To award such sanctions, the Court need not find specific intent or bad faith. *Rentz v. Dynasty Apparel Indus., Inc.*, 556 F.3d 389, 396 (6th Cir. 2009). Rather, such sanctions can be awarded when "'an attorney knows or reasonably should know that a claim pursued is frivolous, or that his or her litigation tactics will needlessly obstruct the litigation of nonfrivolous claims. *Id.* (quoting *Ridder v. City of Springfield*, 109 F.3d 288, 298 (6th Cir 1997).

**2.    Plaintiff's Complaint is Harassment and is Needlessly Increasing the Cost of Litigation.**

Although never explicitly put in writing, counsel for Plaintiff repeatedly referred to the costs of out-of-state litigation to bully Defendant into settling the claim. Plaintiff's bullying continued when, despite having previously admitted his claims would be limited to ~$27,000 maximum based on obvious ordinary course of business and new value exceptions, he filed his Complaint alleging that all ~$80,000 of the payments made during the 90 day preference period were preferential payments. The pattern of harassment and unnecessary increase in cost continued when Plaintiff refused to stipulate to allow Defendant's counsel to appear *pro hac vice*, instead misleading Defendant by indicating he must associate with local counsel, and further pressuring settlement based on costs related to the same.

The final straw causing Defendant to pursue this Motion was Plaintiff's insistence that Defendant obtain and bear the cost of an expert witness to establish that payment within 30 days of issuance of an invoice is objectively within the ordinary course of business. At this point, Plaintiff has outright ignored: (1) evidence that $62,643.75 (at the very least) of the alleged preferential payments clearly fell within the ordinary course and new value exceptions to preferential payments, (2) evidence showing the last ~$27,000 payment was actually payment of two separate

invoices, insisting that Defendant paid a larger invoice via one payment, and (3) case-law attached to Defendant's correspondence specifically rebutting the legal theories of Plaintiff's Complaint with reference to payments received at a slightly accelerated pace than their transactional history. In a final attempt to free itself from Plaintiff's bullying, Defendant requested Plaintiff bear the cost of such an expert witness, as such knowledge (whether or not payment of an invoice within 30 days (23 in this case) is standard business practice in the party's industry) would surely benefit Plaintiff, given the number of preference actions under the umbrella of this jointly administered case. And further considering the substantial recoveries Plaintiff has in his estate based on other assets of the case, such a cost surely burdens Plaintiff less than Defendant, who has already expended more than necessary fending off Plaintiff's harassment, bullying, and pressure to settle up to this point.

**3.** **Plaintiff's Complaint is Frivolous and Plaintiff's Contention that Certain Payments are Preferential Lack Merit Where the Evidence Presented, in Light of Existing Case-Law, Clearly Establishes the Payments Are Excepted Under Ordinary Course of Business and New Value Exceptions.**

At the outset of this case, Plaintiff hung his hat on the (untrue) assumption that the final ~$27,000 payment was faster payment in full than any other invoice payment between the parties. When Defendant proved Plaintiff his assumptions were untrue, Plaintiff refused to give up his claims in an effort to squeeze settlement out of Defendant to avoid the costs of out of state litigation.

Even if Plaintiff claims the Complaint was filed prior to learning the final ~$27,000 was a split payment, a third of which paid off an invoice 48 days after issuance, Plaintiff should have withdrawn his Complaint upon Defendant's presentation of that evidence, combined with case law from this Court (issued by this Court, and in fact showing that payments like those in question in this case were deemed not preference payments in virtually identical situations).

Instead, when faced with this evidence, Plaintiff ignored it and soldiered on with his meritless preference case. When Defendant asserted that it made no special actions to attempt to collect from Plaintiff, did not change any credit agreement, nor did they take steps to enforce the terms of the previous agreement differently, Plaintiff ignored the evidence and case-law and soldiered on. Instead of presenting Defendant with contrary evidence, Plaintiff merely stated that he had "filed his lawsuit in good faith", that he "met his burden', but that he was "always open to discuss resolution" (i.e. "settle or else"). Plaintiff cannot escape liability for sanctions by refusing to acknowledge the evidence contradicting his case. Plaintiff clearly knew, or should have known, that his claims were frivolous and without merit. Plaintiff's ignorance of evidence and case-law, and his general conduct in continuing to pursue this litigation are merely an effort to bully Defendant into settling or else bear the costs of out-of-state mandatory mediation and potential further litigation.

Plaintiff's threadbare Complaint reflects his counsel's disregard for the merits (or lack thereof) of the claim. Defendant incurred legal costs to respond to Plaintiff's continued harassment and threats before and following the filing of his Complaint, and unless Plaintiff and his counsel are assessed sanctions for their behavior, they will continue to needlessly drive up the costs of responding to this frivolous lawsuit.

Defendant gave Plaintiff the opportunity to take corrective action and dismiss this lawsuit by service of a Safe Harbor letter as required by Fed. R. Bankr. P. 9011(c)(1)(B). Plaintiff failed to respond, and 21 days have passed since service of the Safe Harbor Letter.

For these reasons, Defendant requests that the Court award sanctions against Plaintiff in the full amount of all legal fees incurred directly in connection with and indirectly as a result of their misconduct.

## CONCLUSION

WHEREFORE, Defendant Wolverine Oil & Gas Co., Inc. respectfully request that this Court grant this Motion by issuing an Order awarding sanctions against Plaintiff pursuant to Fed. R. Bankr. P. 9011 and 28 U.S.C. § 1927, and granting such other relief as is just and equitable.

Respectfully submitted,

**CLAYSON, SCHNEIDER & MILLER P.C.**

Dated: March 1, 2019

/s/ David P. Miller, attorney
David P. Miller (P79911)
645 Griswold, Suite 3900
Detroit, MI 48226
(313) 237-0850 ext. 113
david@detlegal.com

**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In the Matter of: | In Bankruptcy: |
| **CONSTELLATION ENTERPRISES, LLC.,** *et al.,* | Case No. 16-11213-css<br>Chapter 7<br>Hon. Christopher S. Sontchi |
| Debtors.[4] | |
| **DAVID W. CARICKHOFF, Trustee,** | |
| Plaintiff, | |
| v. | Adv. Pro. 18-50868-css |
| **WOLVERINE OIL & SUPPLY CO., INC.,** | |
| Defendant. | |

**NOTICE OF DEFENDANT'S MOTION FOR SANCTIONS AGAINST PLAINTIFF PURSUANT TO FED. R. BANKR. P. 9011 AND 28 U.S.C. § 1927**

Clayson, Schneider & Miller, P.C., attorneys for Wolverine Oil & Supply Co., Inc., have filed papers with the court entitled Motion for Sanctions Against Plaintiff Pursuant to Fed. R. Bankr. P. 9011 and 28 U.S.C. § 1927.

**Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one in this bankruptcy case. (If you do not have an attorney, you may wish to consult one.)**

If you do not want the court to grant the relief sought in the motion or objection, or if you want the court to consider your views on the motion or objection, within **fourteen (14)** days of the date of this notice, you or your attorney must:

1. File with the court a written response or an answer, explaining your position at:[5]

---

[4] The debtors in the above-captioned chapter 7 cases, along with the last four digits of the federal tax identification number for each of the debtors, where applicable are: Constellation Enterprises LLC (9571 ); JFC Holding Corporation (0312); The Jorgensen Forge Corporation (1717); Columbus Holdings Inc. (8155); Columbus Steel Castings Company (8153); Zero Corporation (0538); Zero Manufacturing, Inc. (8362); Metal Technology Solutions, Inc. (7203); Eclipse Manufacturing Co. (1493); and Steel Forming, Inc. (4995) (collectively, the "Debtors").

[5] Response or answer must comply with F. R. Civ. P. 8(b), (c) and (e)

**United States Bankruptcy Court**
**District of Delaware**
**824 Market Street, 3rd Floor**
**Wilmington, Delaware 19801**

If you mail your response to the court for the filing, you must mail it early enough so the court will **receive** it on or before the date stated above. All attorneys are required to file pleadings electronically.

You must also send a copy to:

| | |
|---|---|
| David P. Miller | Office of the U.S. Trustee |
| 645 Griswold, Suite 3900 | 844 King Street, Suite 2207 |
| Detroit, Michigan 48226 | Lockbox 35 |
| | Wilmington, DE 19801 |

2. If a response or answer is timely filed and served, the clerk will schedule a hearing on the motion and you will be served with a notice of the date, time and location of the hearing.

**If you or your attorney do not take these steps, the court may decide that you do not oppose the relief in the motion or objection and may enter an order granting that relief.**

Respectfully submitted,

**CLAYSON, SCHNEIDER & MILLER P.C.**

Dated: March 1, 2019

*/s/ David P. Miller, attorney*
David P. Miller (P79911)
645 Griswold, Suite 3900
Detroit, MI 48226
(313) 237-0850 ext. 113
david@detlegal.com

# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In the Matter of: | In Bankruptcy: |
| **CONSTELLATION ENTERPRISES, LLC.,** *et al.,* | Case No. 16-11213-css<br>Chapter 7<br>Hon. Christopher S. Sontchi |
| Debtors.[6] | |

| | |
|---|---|
| **DAVID W. CARICKHOFF, Trustee,** | |
| Plaintiff, | |
| v. | Adv. Pro. 18-50868-css |
| **WOLVERINE OIL & SUPPLY CO., INC.,** | |
| Defendant. | |

## CERTIFICATE OF SERVICE

I hereby certify that on March 1, 2019, I (or an employee of Clayson, Schneider & Miller, P.C.), served the following paper(s):

> Motion for Sanctions Against Plaintiff, Proposed Order, Brief in Support, Notice of Motion, Certificate of Service, and Exhibits.

upon the following parties:

---

[6] The debtors in the above-captioned chapter 7 cases, along with the last four digits of the federal tax identification number for each of the debtors, where applicable are: Constellation Enterprises LLC (9571 ); JFC Holding Corporation (0312); The Jorgensen Forge Corporation (1717); Columbus Holdings Inc. (8155); Columbus Steel Castings Company (8153); Zero Corporation (0538); Zero Manufacturing, Inc. (8362); Metal Technology Solutions, Inc. (7203); Eclipse Manufacturing Co. (1493); and Steel Forming, Inc. (4995) (collectively, the "Debtors").

| | |
|---|---|
| Office of the U.S. Trustee<br>844 King Street, Suite 2207<br>Lockbox 35<br>Wilmington, DE 19801 | David W. Carickhoff<br>℅ Archer & Greiner, P.C.<br>630 Third Avenue<br>New York, NY 10017 |

by filing the paper(s) electronically, which will notify all those signed up to receive notices of paper filed in this case via CM/ECF, including the above referenced parties.

                                    **CLAYSON, SCHNEIDER & MILLER P.C.**

Dated: March 1, 2019               */s/ David P. Miller, attorney*
                                              David P. Miller (P79911)
                                              645 Griswold, Suite 3900
                                              Detroit, MI 48226
                                              (313) 237-0850 ext. 113
                                              david@detlegal.com